BYE, Circuit Judge.
Nancy Mader sued the United States under the Federal Tort Claims Act, alleging the Department of Veterans Affairs (VA) acted negligently in providing medical treatment to her late husband, Robert Mader. The district court granted the government’s motion to dismiss for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1), holding Mader’s failure to provide the VA with proof of her status as the legal representative of her husband’s estate, as well as proof of Mader’s attorney’s authority to bring a claim on her behalf, precluded jurisdiction. We conclude a plaintiff meets the Act’s jurisdictional prerequisites when she provides the relevant agency with “(1) sufficient information for the agency to investigate the claims ... and (2) the amount of damages sought.” Farmers State Sav. Bank v. Farmers Home Admin., 866 F.2d 276, 277 (8th Cir. 1989). Because Mader met these requirements, we reverse and remand.
I
Robert Mader received medical care at the Veterans Affairs Medical Center in Lincoln, Nebraska. On or about May 28, 2004, a physician instructed Mr. Mader to taper off his previously prescribed medicine of Paxil by taking half a tablet daily for one week and then stopping entirely. Mr. Mader was then instructed to begin taking Seroquel. Mr. Mader followed these instructions. On or about August 3, 2004, Mr. Mader died due to a self-inflicted gunshot wound to the head.
Nancy Mader[1] first sought an administrative remedy, filing a complaint with the VA, alleging negligence in the VA’s medical care of her husband. After receiving the complaint, the VA requested proof of Mader’s status as the legal representative of her husband’s estate, as well as proof of Mader’s attorney’s authority to bring a claim on her behalf. Neither Mader nor her attorney responded to this request. The VA denied Mader’s administrative claim on both procedural and substantive grounds. First, the VA found that Mader, by failing to submit the requested agency information, had failed to perfect a claim. Second, and in the alternative, the VA found that even if Mader had submitted a valid claim, no negligence occurred in the care of Robert Mader.
Nancy Mader filed suit in district court under the Federal Tort Claims Act. The United States brought a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1). The district court granted the government’s motion, holding that Mader, by failing to answer the VA’s request for information, had failed to satisfy the jurisdictional prerequisites to bringing an action in federal court. Accordingly, the district court dismissed Mader’s cona- *998 plaint without prejudice. Mader appeals the dismissal of her case.
II
This court reviews the district court’s subject matter jurisdiction de novo. See Keene Corp. v. Cass, 908 F.2d 293, 296 (8th Cir.1990).
The United States enjoys sovereign immunity except to the extent it has consented to be sued. United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); Iowa Pub. Serv. Co. v. Iowa State Commerce Com’n, 407 F.2d 916, 920 (8th Cir.1969). A corollary to the immunity doctrine is the rule that the United States may define the conditions under which actions are permitted against it. Peterson v. United States, 428 F.2d 368, 369 (8th Cir.1970).
The condition at issue here is the requirement found at 28 U.S.C. § 2675(a) that a claim be properly presented to the appropriate federal agency and denied before an action can be brought in federal district court. This court has held that the administrative exhaustion requirement of 28 U.S.C. § 2675(a) is jurisdictional, Melo v. United States, 505 F.2d 1026, 1028 (8th Cir.1974); Meeker v. United States, 435 F.2d 1219, 1220 (8th Cir.1970), and thus, it cannot be waived.
Section 2675(a) states, in relevant part: “An action shall not be instituted upon a claim against the United States ... unless the claimant shall have first presented the claim to the appropriate Federal agency.... ” The statute is silent on the meaning of the phrase “presented the claim.”
The relevant legislative history described the administrative exhaustion requirement as:
intended to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States. In accomplishing these purposes, the more expeditious procedures provided by this bill will have the effect of reducing the number of pending claims which may become stale because of the extended time required for their consideration. The committee observes that the improvements contemplated by the bill would not only benefit private litigants, but would also be beneficial to the courts, the agencies, and the Department of Justice itself.
S.Rep. No. 89-1327 (1966), as reprinted in 1966 U.S.C.C.A.N. 2515, 2516.
The Department of Justice has promulgated regulations governing the presentment process which the government contends govern the sufficiency of notice for jurisdictional purposes. The relevant regulation, 28 C.F.R. § 14.2,- states, in relevant part:
a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.
28 C.F.R. § 14.2(a).
There is a split of authority among courts regarding the scope of the jurisdictional prerequisites necessary to hear claims brought pursuant to the Federal *999 Tort Claims Act. The majority of courts have held that a plaintiff must give the applicable agency “minimal notice,” which includes (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim. See, e.g., GAF Corp. v. United States, 818 F.2d 901, 919 (D.C.Cir.1987). A minority of courts have imposed a more stringent standard, holding that a plaintiff must comply with each of the regulatory requirements found in 28 C.F.R. § 14.2, which include evidence of “the title or legal capacity of the person signing ... accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.” See, e.g., Kanar v. United States, 118 F.3d 527, 528-29 (7th Cir.1997).
The leading case for the majority position is GAF Corp. There, the D.C. Circuit examined the statutory text, structure of the statute, and legislative history before concluding that Congress did not authorize the Department of Justice to create jurisdictional hurdles above and beyond those created explicitly by statute. GAF Corp., 818 F.2d at 919 (“[I]t is apparent that the presentment requirement imposes on claimants a burden of notice, not substantiation, of claims.”). In support of this position, the GAF Ccnp. court noted that while Congress gave executive agencies the authority to promulgate regulations regulating the claims settlement process, see 28 U.S.C. § 2672, executive agencies were given no authority by Congress to set the jurisdictional hurdles to bringing an action in federal court. Thus, according to the GAF Corp. court, while the regulations defining the presentation of a claim are valid insofar as the regulations dictate what a plaintiff must submit before the government will consider entering into a settlement, the regulations are invalid insofar as they purport to alter the Federal Tort Claims Act’s jurisdictional requirements. GAF Corp., 818 F.2d at 919. The majority position has been adopted in the Ninth Circuit, see Warren v. United States Dep’t of Interior Bureau of Land Mgmt., 724 F.2d 776, 780 (9th Cir.1984) (en banc), the Third Circuit, see Tucker v. United States Postal Serv., 676 F.2d 954, 959 (3d Cir.1982), the Fifth Circuit, see Adams v. United States, 615 F.2d 284, 289 (5th Cir.) clarified, reh’g denied, 622 F.2d 197 (5th Cir.1980), the Sixth Circuit, see Douglas v. United States, 658 F.2d 445, 447 (6th Cir. 1981), and the Eleventh Circuit, see Bush v. United States, 703 F.2d 491, 494 (11th Cir.1983).
The leading case for the minority position is Kanar. There, the Seventh Circuit held 28 C.F.R. § 14.2 does indeed supply the definition of presenting a claim for jurisdictional purposes. Kanar, 118 F.3d at 529. According to the Seventh Circuit, GAF Corp. and other courts read Congress’ grant of authority too narrowly, “cover[ing] only the means of claims-processing, and not the identification of ‘claims’ in the first place.” Id. Indeed, according to the Kanar court, the process of settling claims is inextricable from the presentation of claims itself; a poorly presented claim cannot realistically be settled. Therefore, the statutory grant of authority, according to the Kanar court, is broad enough to cover setting the terms for the presentation of claims. Id.
The Eighth Circuit is commonly cited in other circuits as an example of a court having adopted the minority position. See, e.g., Kanar, 118 F.3d at 529. However, a review of the two apposite Eighth Circuit cases leaves this court’s established position far from clear'. In short, while Lunsford v. United States, 570 F.2d 221 (8th Cir.1977), arguably holds that following the regulatory requirements for presenting a claim is a jurisdictional prerequisite *1000 to filing a suit under the Federal Tort Claims Act, Farmers State Savings Bank v. Farmers Home Administration, 866 F.2d 276 (8th Cir.1989), adopts the “minimal notice” rule accepted by the majority of our sister circuits.
In Lunsford, a group of plaintiffs attempted to bring a class action lawsuit against the federal government under the Federal Tort Claims Act. Lunsford, 570 F.2d at 222. Although five of the named plaintiffs first presented claims to the Bureau of Reclamation, the named plaintiffs attempted to file suit on behalf of a substantial class of unnamed, similarly-situated plaintiffs. Id. The district court dismissed the case for lack of jurisdiction with respect to the unnamed plaintiffs, reasoning that they had never presented a claim to the appropriate administrative agency. Id. This court affirmed, citing three reasons why the district court lacked jurisdiction: (1) the named plaintiffs never attempt to present claims on behalf of unnamed class members to the Bureau of Reclamation, (2) the named plaintiffs failed to state a sum certain with respect to the class claims, and (3) the named plaintiffs failed to establish authority to act as agents and present claims on behalf of unnamed class members. Id. at 225-27.
In Farmers State Savings Bank, the plaintiff alleged Farmers Home Administration, an executive agency, failed to make a promised loan, which resulted in monetary loss to the plaintiff. Farmers State Sav. Bank, 866 F.2d at 276. Prior to filing suit, the plaintiff sent a series of letters to the Farmers Home Administration detailing its grievance and seeking a settlement. Id. Unable to settle the matter, the plaintiff filed suit under the Federal Tort Claims Act. The district court dismissed the case for lack of jurisdiction, and this court reversed and remanded. Id. at 277. In contrast to Lunsford, the Farmers court held that “a claimant satisfies the notice requirement of section 2675 if he provides in writing (1) sufficient information for the agency to investigate the claims ... and (2) the amount of damages sought.” Id. (citations omitted).
Putting aside momentarily Eighth Circuit precedent, it is evident the majority of our sister circuits have reached the more persuasive result in holding that the presentation of a claim, as contemplated by section 2675, requires nothing more than sufficient information for the agency to investigate the claims and the amount of damages sought. This comports with the natural and ordinary meaning of presenting a claim. With respect to the regulations promulgated by the Department of Justice, we agree 28 U.S.C. § 2672 does not delegate the authority to set the jurisdictional requirements of a Federal Tort Claims Act suit; rather, Congress merely authorized the Department of Justice to promulgate rules regulating the settlement of potential claims.[2]
Further, the Eighth’s Circuit’s position is unsettled. Plainly, the Lunsford court was of the opinion that the claim presenta *1001 tion rules found in 28 C.F.R. § 14.2 are jurisdictional; otherwise, the court would not have cited the absence of proof of an agency relationship on its way to affirming the dismissal of the plaintiffs’ class action suit. However, the Lunsford court never justified its position that complying with the Department of Justice’s regulations is mandatory; rather the court asserted the point with no discussion. Finally, it is worth noting that the Lunsford court’s primary holding — class action suits are not cognizable under the Federal Tort Claims Act — is not contingent on a threshold determination that plaintiffs must follow all of the requirements in 28 C.F.R. § 14.2. Indeed, two of the Lunsford court’s reasons for rejecting the suit — the named plaintiffs’ failure to present claims on behalf of unnamed class members and failure to state a sum certain with respect to the class claims — are valid reasons for rejecting class action suits even under the less-stringent jurisdictional standard adopted by the majority of other circuits. See, e.g., Caidin v. United States, 564 F.2d 284, 286 (9th Cir.1977).
The same flaws in the Lunsford opinion are evident in Farmers State Savings Bank. Similar to Lunsford, the Farmers court adopted the minimal notice standard without meaningful discussion. In addition, the final result in Farmers was not contingent on a resolution of the jurisdictional standard; rather, the court’s conclusion — that letters sent to the appropriate executive agency are sufficient to provide the substance of a claim — would be the same under either jurisdictional standard, provided the letters included the necessary information.
In light of Lunsford and Farmers, this case presents difficulties in following the “cardinal rule in our circuit that one panel is bound by the decision of a prior panel.” United States v. Betcher, 534 F.3d 820, 823-24 (8th Cir.2008). Lunsford and Farmers each applied a materially different standard; compliance with both prior decisions appears to be logically impossible.[3] When this court has confronted in-tracircuit splits of authority, the court has not considered itself bound by either position; instead, this court has endeavored to determine the “better approach.” See, e.g., United States v. LeBrun, 363 F.3d 715, 719 (8th Cir.2004). But see Williams v. Nat’l Football League, 598 F.3d 932, 933-35 (8th Cir.2009) (Colloton, J., dissenting from denial of rehearing en banc) (pointing out that other circuits have concluded the better practice normally is to follow the earliest opinion).
Adopting the “better rule” here, we conclude a plaintiff meets the Federal Tort Claims Act’s jurisdictional prerequisites when she provides the relevant agency with “(1) sufficient information for the *1002 agency to investigate the claims ... and (2) the amount of damages sought.” Farmers State Savings Bank, 866 F.2d at 277. Because it is undisputed Mader met these requirements, we conclude the district erred when it determined it lacked jurisdiction.
Ill
Although not addressed by the parties or the district court below or either party on appeal, Judge Beam, in his dissent, would conclude the district court lacked jurisdiction for the independent reason that Mader’s claim was untimely. Although we agree with the dissent that the applicable statute of limitations is jurisdictional and therefore an appropriate subject of inquiry by this court, we conclude Mader’s complaint was timely filed.
The relevant statute of limitations is contained in 28 U.S.C. § 2401(b), which provides that a Federal Tort Claims Act claim “shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues.”
Nancy Mader’s claim accrued on August 3, 2004, the day Robert Mader died. The VA received Mader’s claim via mail on August 3, 2006. Accordingly, Mader presented her claim on August 3, 2006 — two years to the day after the claim accrued.
The question presented, therefore, is whether the last day to file a claim was August 2, 2006, or August 3, 2006. That question, in turn, is largely resolved by determining whether the date the claim accrued — August 3, 2004 — counts as “day zero” or “day one” for purposes of the limitations clock. Previous opinions of this court strongly suggest that when filing a Federal Tort Claims Act claim, the date the claim accrues counts as day zero. See, e.g., Wilson ex rel. Wilson v. Gunn, 403 F.3d 524, 526 (8th Cir.2005) (“Since Wilson’s administrative claim [under the FTCA] was presented on January 28, 2002, it is time-barred if it accrued before January 28, 2000.”); McDuffee v. United States, 769 F.2d 492, 494 (8th Cir.1985) (excluding the date the action accrued when calculating the Federal Tort Claims Act statute of limitations).
Typically, calculating a statute of limitations period under federal law is done by reference to Federal Rule of Civil Procedure 6(a). See Fed.R.Civ.P. 6(a) (“The following rules apply in computing any time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time.”). Rule 6(a)(1)(A) directs courts as follows: “When the period is stated in days or a longer unit of time ... exclude the day of the event that triggers the period.... ” Although Rule 6(a) cannot expand or constrict the jurisdiction of federal courts, see Mattson v. U.S. W. Commc’ns, Inc., 967 F.2d 259, 262 (8th Cir.1992), the rule may provide a useful “means of determining the beginning and end of a statute of limitations prescribed elsewhere in law.” Bartlik v. U.S. Dept. of Labor, 62 F.3d 163, 166 (6th Cir.1995) (en banc); cf. Union Nat’l Bank v. Lamb, 337 U.S. 38, 40-41, 69 S.Ct. 911, 93 L.Ed. 1190 (1949) (“Since [Rule 6(a) ] had the concurrence of Congress, and since no contrary policy is expressed in the statute governing this review, we think that the considerations of liberality and leniency which find expression in Rule 6(a) are equally applicable to [the federal statute at issue].”).
The dissent would conclude the two-year statute of limitations governing Mader’s claim expired on August 2, 2006. For support, the dissent relies solely on Matt-son. In Mattson, the statute of limitations required plaintiffs to bring actions under the Fair Debt Collection Practices Act *1003 “within one year from the date on which the violation occurs.” 15 U.S.C. § 1692k(d); see Mattson, 967 F.2d at 260. The violation in Mattson occurred on November 27, 1989, and the claimant filed suit on November 27, 1990. Mattson, 967 F.2d at 260-62. Over a sharp dissent by Judge McMillian, id. at 262-64 (McMillian, J., dissenting), we interpreted the phrase “within one year from [the violation date]” to give the claimant 365 days beginning on the violation date to bring her action, and ultimately concluded the plaintiffs claim was untimely. Id. at 262 (majority opinion).
We note that in the eighteen years since Mattson was decided, the case has been rejected by every appellate court that has considered adopting its holding on calculating statutes of limitations. See American Canoe Ass’n, Inc., Sierra Club v. Attalla, 363 F.3d 1085, 1089 n. 4 (11th Cir. 2004) (noting that Mattson “appears to stand alone”); Johnson v. Riddle, 305 F.3d 1107, 1115 (10th Cir.2002) (stating that “[apparently, every other circuit to have weighed in on the issue has rejected the position adopted by Mattson ”); Maloy v. Phillips, 64 F.3d 607 (11th Cir.1995) (“We ... adopt the approach used in Mattson, save for the calculation of the days from the mailing of the collection letter.”). At least two federal courts of appeals have described the position adopted by Mattson as “frivolous.” United Mine Workers v. Dole, 870 F.2d 662, 665 (D.C.Cir.1989); Frey v. Woodard, 748 F.2d 173, 175 (3d Cir.1984). In addition, we also note that the single case Mattson relied on to support its position, Rust v. Quality Car Corral, Inc., 614 F.2d 1118 (6th Cir.1980), has subsequently been unanimously overruled by the Sixth Circuit sitting en banc. See Bartlik v. U.S. Dept. of Labor, 62 F.3d 163, 166 (6th Cir.1995) (en banc) (referring to Rust as “erroneous”).[4]
Whatever the continuing vitality of Mattson, we decline to apply its reasoning to the statute of limitations at issue in this case. As the dissent concedes, the language of the Federal Tort Claims Act’s statute of limitations differs from the limitations language contained in the Fair Debt Collection Practices Act and analyzed in Mattson. While the Fair Debt Collection Practices Act’s statute of limitations requires filing suit “within one year from the date on which the violation occurs,” 15 U.S.C. § 1692k(d), the Federal Tort Claims Act requires claimants to present their claims “within two years after such claim accrues.” 28 U.S.C. § 2401(b) (emphasis added). The presence of the word “after” conclusively demonstrates that Congress did not intend the date the claim accrued to count as the first day of the limitations period. See Johnson v. Meyers, 54 F. 417, 417 (8th Cir.1893) (construing a statute of limitations stating “that no appeal ... in the circuit court of appeals ... shall be taken or sued out except within six months after the entry of the order, judgment, or decree sought to be reviewed,” and holding that “[a]s the decree sought to be reviewed here was entered May 27, 1892, the last day within the six months after its entry was November 27, 1892.”). See also Wilson, 403 F.3d at 526; McDuffee, 769 F.2d at 494.[5] We *1004 therefore conclude that Mader’s claim was timely filed.
jy
Reversed and remanded.

. This opinion will alternatively refer to Nancy Mader as simply "Mader.” All references to Robert Mader will include his full name.

. The dissent would conclude that compliance with the regulatory requirements found in 28 C.F.R. § 14.2 is a mandatory prerequisite to jurisdiction. But the dissent's assertion that “today's holding impedes the expeditious and fair settlement of FTCA claims” misses the core issue presented by this case. We cast no doubt today on the validity of 28 C.F.R. § 14.2 insofar as the rule sets out requirements plaintiffs must follow as a prerequisite to an administrative settlement. Congress clearly authorized the promulgation of rules for this purpose. See 28 U.S.C. § 2672. However, nowhere in 28 U.S.C. § 2672 or any other statute did Congress authorize the Department of Justice to constrict the jurisdiction of the federal courts by adding jurisdictional requirements beyond what is required by section 2675(a).

. The dissent would interpret Lunsford to "de-finen what constitutes sufficient information to investigate the claim when a third party presents a claim on the claimant’s behalf,” thereby purporting to harmonize Lunsford with the minimal notice standard announced in Fanners. This interpretation of Lunsford is not persuasive. At the outset, it is difficult to see how evidence of authority to bring a claim could affect the "sufficient information” prong of the minimal notice requirement, which requires nothing more than "a written statement sufficiently describing the injmy to enable the agency to begin its own investigation.” GAF Corp. v. United States, 818 F.2d 901, 919 (D.C.Cir.1987) (emphasis added). In Lunsford, the court had no information whatsoever about the injuries of the unnamed plaintiffs. This case, by contrast, further undercuts the dissent’s reasoning. Although the VA sought from Mader evidence of her authority to bring a claim, Mader’s refusal to provide the information did not hinder the VA from investigating the claim on the merits and making a formal determination that no negligence occurred in the care of Robert Mader.

. See generally Teresa D. Caskey Locke, Note, Oh, What a Difference a Day Makes: Mattson v. U.S. West Communications, Inc., 62 UMKC L.Rev. 227 (1993) (criticizing Mattson for "departing] from the traditional and clearly defined method of calculating time” and "add[ing] confusion to an area of the law that must be absolutely clear and certain to ensure potential litigants the full scope of their statutory rights”).

. The dissent's interpretation of the statute would also lead to potentially absurd results. Consider a hypothetical statute — identical to *1004 the Federal Tort Claims Act statute of limitations except for the length of time involved— requiring a claimant to take action "within one day after such claim accrues.” The dissent would necessarily interpret the phrase "one day after such claim accrues” to mean the same day the claim accrued. Such a reading confounds common sense.
Of course, such one-day periods of limitations are common across many areas of law. Consider 18 U.S.C. § 922, the familiar federal statute criminalizing firearm possession in a number of different circumstances. Section 922(s)(l)(A)(i)(III) provides:
Beginning on the date that is 90 days after the date of enactment of this subsection and ending on the day before the date that is 60 months after such date of enactment, it shall be unlawful for any licensed importer, licensed manufacturer, or licensed dealer to sell, deliver, or transfer a handgun ... to an individual who is not licensed under section 923, unless ... the transferor has ... within 1 day after the transferee furnishes the statement, provided notice of the contents of the statement to the chief law enforcement officer of the place of residence of the transferee....
18 U.S.C. § 922(s)(l)(A)(i)(III) (emphasis added). The rules governing the procedures of the National Labor Relations Board contain a similar one-day period of limitations. Those rules provide that “fwjithin one day after a vote to close a meeting ... the agency shall make publicly available a full written explanation of its action closing the meeting....” 29 C.F.R. § 102.141 (emphasis added). Similarly, the rules governing the procedures of the Federal Trade Commission state that, in the course of filing an interlocutory appeal, "[t]he party [seeking review] may file an application for review with the Commission within 1 day after notice that the Administrative Law Judge has issued the requested determination. 16 C.F.R. § 3.23 (emphasis added). Section 3553(b)(1) of Competition in Contracting Act of 1984 requires the Government Accountability Office to notify the "Federal agency involved” "[w]ithin one day after the receipt of a protest.” 31 U.S.C. § 3553(b)(1) (emphasis added). See also Conn. Gen.Stat. § 9-445 (under Connecticut election law, "there shall be a recanvass of the returns of the voting machine ... unless within one day after the primary ... the defeated candidate ... file[s] a written statement waiving this right to such recanvass”) (emphasis added); Ala.Code § 35-11-371 ("[A] claimant shall also within one day after the filing of such claim or lien, mail a copy thereof by registered or certified mail, postage prepaid, for each person, firm or corporation so claimed to be liable on account of such injuries....”) (emphasis added); Minn. R. Civ. P. 63.03 (1984) ("the affidavit shall be served and filed ... in any district having two or more judges, within one day after it is ascertained which judge is to preside at the trial or hearing.”) (emphasis added); Or.Rev.Stat. § 652.140 ("When an employer discharges an employee or when employment is terminated by mutual agreement, all wages earned and unpaid at the time of the discharge or termination become due and payable not later than the end of the first business day after the discharge or termination.”) (emphasis added); N.Y. Real Prop. Acts Law § 735 (“[Sjervice of the notice of petition and petition shall be made by personally delivering them to the respondent ... and in addition, within one day after such delivering to such suitable person or such affixing or placement, by mailing to the respondent both by registered or certified mail and by regular first class mail.... ”) (emphasis added).
If adopted, the reasoning of the dissent would compel the conclusion that the action required by each of these and other similar laws be accomplished the same day as the triggering event, possibly within mere minutes of the triggering event. But the plain language of the laws quoted above simply does not tolerate such a counterintuitive construction.